Good morning, Your Honors. Mitchell Keeter on behalf of Appellant Alejandro Velazquez. I'd like to reserve five minutes of my time for rebuttal, please. Please watch your clock. Thank you. The freedom of individuals to oppose or challenge police action verbally without thereby risking arrest is one important characteristic by which we distinguish ourselves from a police state. And yet the testimony, at least of Dennis Magana, indicated that was the basis for the arrest below. Mr. Magana testified that the officer was about to leave and he heard Appellant say, What's up? The officer then put the car in reverse, returned and said, What did you say? When Magana said, Well, we're leaving. No, not you, him. When Velazquez confirmed, I said, What's up? At that point, Abohadawan speed walked towards him, said, I'm tired of people calling because of you MFers, threw him to the ground and began striking him with a baton. At least from that evidence, it suggests there was no valid basis for any detention or arrest. The officer was not acting to protect Appellant. Is there a little more between the two than that? I thought there was a, I may have the sequence mixed up, I thought there was an order to put his hands behind his head and I thought there was another verbal. Well, first of all, there of course were many witnesses so there was different evidence and much of our position is that there was a simple conflict in the evidence which warranted going to the jury. Right, and Rule 50 motion was granted. Let me ask, something I could not find in the transcript and I think it's important and I'd like you to answer. What did the judge say to the jury when he directed verdict in favor of the defendant on the unlawful, on the arrest count? I mean, I don't recall any specific, I could check, I don't recall any specific description as to the legitimacy or illegitimacy of the arrest. It appeared to be removed from the jury. Did it just, it was taken away from the jury, but did it just disappear or did the judge say something to the jury like that's, you know, count whatever it was, I don't remember what number it was, count two was no longer before you, you don't need to speculate as to why and then moved on or did he say something like I've determined that the arrest was valid? No, I don't believe he made that specific comment. I will definitely check during Philly's argument to get the precise wording, but I don't, I don't believe that there was any affirmative statement that it was valid, but it did remove it from the jury. Do the instructions have any? Well, I guess this was all after the instructions. No, it was before, so. Before, correct. Did the instructions say anything about the validity of the arrest? I don't recall that. I do recall that, in fact, most of the instructions and certainly the testimony was that the officer could use force that was reasonable to affect the arrest. I mean, the reasonableness of the force was a big issue. That was an important part of Appley's testimony, that I could do whatever was reasonable to. But as to the excessive force, the validity of the arrest would be a relevant consideration. In other words, I guess this is what's underlying the question. If we were to reverse on the rule 50 on the arrest, would we, where does that leave the excessive force question? Well, that's an important question. I mean, they are different, but I certainly believe that for many reasons the excessive force claim was already vulnerable. And much of the question asked to the excessive force is what may the officer do to prevent a lawful command? I mean, it's legitimate. He kept testifying. Are you arguing that it's automatically reversible, is that, or you're not arguing that, that the excessive force would necessarily go as well? I can't. I don't know that it would be automatic. But it would certainly, I mean, I know that Appley's have sort of framed our challenge as being to the sufficiency of the evidence of the excessive force, and that is not the nature of our challenge to the excessive force. It concerns the evidentiary errors. But in particular, the very fact that an officer, you know, they testified that the instructions were that he may use whatever force is reasonable to effect compliance with his lawful commands. But if the commands were, in fact, not lawful, that would place the entire question in a different light. The commands, in terms of what Judge Smith asked, for example. There, I think the other officer said he didn't hear any commands. Is that right? That's correct. And Officer Ron was between 4 and 10 feet away. And did other people? What did Velasco say? Yeah, the plaintiff's testimony, also there was testimony that there was nothing heard. And that was part of the problem, because the court said, the quote, the fact that somebody didn't hear something doesn't necessarily mean it didn't happen. He didn't say necessarily. He said it's not evidence. Which is, to my mind, kind of silly. It's not necessarily, but it's evidence. Well, and it does create a conflict. I mean, if someone is 4 feet away and says, I never heard him issue a command, then that creates a conflict in the evidence as to whether there was a command. It's particularly interesting that one of the people who, that the police in this that one of the officers said he didn't hear the command. And he was 4 feet away? 4 to 10 feet away, I believe. And he also didn't hear the profanity, for whatever that's worth, nor did anybody else.  Right. I mean, the profanity. Did anybody else hear the profanity? Well, no, although the court misconstrued Appellant's testimony, saying he doesn't even deny it. He said he didn't recall. But, in fact, he did deny it. That's in the briefing. So the problem with the profanity is the court, at least, was seriously considering whether that in itself could create probable cause, the very use of the term profanity. And it can't. And even the officers say it couldn't, but the court seemed to be considering it for that. And that itself was problematic. I mean, as if there's a basis for arrest simply because he's using a profanity. On the Minnell claim, it seemed to the one big chunk of evidence that didn't come in on the Minnell claim was the evidence with regard to this officer's past history. What was that evidence? I mean, there was evidence that there had been complaints about aggressiveness on his part in the past. And those were kept out. Lots of complaints. More than one. There were several, yes. And it was appellant's desire to have them be considered. And it was particularly interesting when the defense brought in not just a conviction, but an arrest of appellant that occurred after this incident, simply because while he's on the ground, curled up, says, I'm not about violence. And that was a basis to start bringing in his history. I mean, there were other, certainly other issues of evidence that came in regarding this UFC fighting, asking 17 different questions about kicking and screaming. But when the officer's own testimony was he didn't kick, he didn't hit, he didn't do anything violent towards me, I had no, you know, there was no need for the officer to use any force in self-defense. And that also was error. Initially, I focused the briefing on the public intoxication question, 647F. But the defense, appellees disclaim any reliance on that. They're saying the arrestable offense was 148A, obstructing arrest. But as many cases make clear, 148A presumes a predicate offense. There must be some lawful basis for arrest for the suspect to be guilty of resisting arrest. Let me stop you there, because I want to be very clear about what California law is. I think it's different than, say, the law in Rhode Island. And I want to make sure we understand it. The cases I reviewed indicate that the law in California is, I think, that it's not a crime to nonviolently resist the unlawful actions of a police officer. That's Inree Michael V. And that a person, an officer is not performing his duties if he detains an individual without reasonable suspicion. So you can resist that. So that's my question. Is the law in California that you have to, as it is in some states, that you must comply with the police officer's command, even if the arrest is unlawful? Or is it that if the arrest, the predicate is unlawful, you don't have to comply with the command? Which is it? That's my understanding. I mean, that's what Garcia seems to say. I mean, there are, of course, three different levels of encounters. There's a consensual encounter, a detention, and an arrest. And if it's a consensual encounter, the suspect is free to walk away. If there is a reasonable detention, there must be reasonable suspicion that the suspect has broken the law. And, I mean, the other caveat is there is no authority to engage in forceful resistance. But there was no forceful resistance. Right. I think the most they said he took a step back. Not running away. He took a step back, probably because he didn't want to get smashed with a baton. But, I mean, there was no resistance. The Garcia case, the McKinney case, the Ninth Circuit case, McKinney v. Nielsen,  in that case there was someone who didn't open a door upon a lawful command. That's not enough for 148A. And there was, I mean, the fact is the officer went back, took extra time, and that seemed to allegedly violate 148A because it delayed him in his duties. Let me ask you one. I know we're cutting into your rebuttal time, and I don't want to do that. But I went back this morning, and I read the closing argument of the city's council. And it is replete with statements to the effect that in this society, if a police officer tells you to do something, you do it. That's that. No questions. I couldn't count the number of times council said that in closing argument, which seems to me to be a misstatement of the law. Might be a misstatement of the culture. Right. A statement that has to do with culture, not as to the law. And I was shocked that there wasn't an objection during the argument as to this, you know, very powerful argument to the jury. The officer tells you to, you know, jump, you say how high. That was the argument. Right. And I wish trial counsel had. However, trial counsel had made many objections that not only were overruled, but were overruled with Or, you know, when trial counsel would say something, the court would say, your opinion doesn't matter. And then trial counsel would make the same objection against Apolli and was overruled. So, unfortunately, the court's demeanor, not just in decisions and objections, but in the tone, really chilled trial counsel's ability to properly present the case. So I can understand, given everything you've seen in the record before that, why trial counsel might have been very reluctant to interrupt at that point. I'd like to reserve the remainder of my time. Thank you, Your Honors. Good morning, Your Honors. And may it please the Court, Howard Russell on behalf of the City of Long Beach and Officer Abu-Hadwan. Judge Smith, to answer a question that came up in the appellate's argument, I do not recall Judge Reel mentioning anything to the jury about the false arrest claim being dismissed or any lawful arrest. Our supplemental excerpts of record include the entire trial testimony. And you can double-check that. But I don't recall anything to that effect. What happened to the instructions? Did they say anything that connected the validity of the arrest? I read the instructions this morning, and it's not there. And I don't recall specifically Judge Berzon. But as I recall, what happened was I made the Rule 50A motion on the excessive force and the false arrest. Judge Reel granted it on the false arrest, denied it as to the excessive force. And then the instructions didn't mention anything about the lawfulness of the arrest. But the district court granted the JMOL on the false arrest claim based on his conclusion that there was probable cause for the arrest. That's correct, Judge Berzon. And was it as to Section 148? Yes. So only, exclusively? Well, the argument that the plaintiffs were making against the Rule 50A motion was that there wasn't probable cause to arrest for 647F, which is the public intoxication. And Judge Reel said, no, there was probable cause to arrest for the 148A1 because the evidence was that the officers had told the group to And under Devenpeck v. Alford, which is a case that's not cited in the brief, but the officer's subjective intent as to probable cause is not dispositive. If he has probable cause for some offense, even if he got the offense wrong. All right. If a policeman comes, if I'm in front of my house and a policeman comes and tells me to get in my house and I don't get in my house, I've committed an offense. What's the offense? There's no offense there, Judge Berzon, because there's, well, it depends what time of day it is, and it depends what you're doing outside of your house. This was 330 and I know, but you need, I mean, the order to disperse itself has to be connected to something, i.e., disturbing the peace or something. Right. And it's 330 in the morning. The police have been But what is it? What is the offense that justified the order to get in the house and disperse? It would be PC-415, public disturbance. The police have been Is that ever even mentioned in this case? I think it was mentioned as to the police were dispatched to that location. Officers had been there previously, and Mr. Magana's testimony verified that officers had been there previously. In fact, Officer Ron and Officer Abouhagwan both testified that the reason they even encountered Mr. Velazquez is because they were sent there because they received a call about a noise complaint. Right. So when they show up So now you're saying it wasn't the resistance to arrest and it wasn't the public drunkenness, it was a public disturbance charge. What I'm saying is when the police first arrive on the scene, it's their duty to investigate what's the reason for the call. And they see a group of people out in the street at 3.30 in the morning. They observe beer bottles. But wait a second. We've got to focus in on Velazquez, okay? Right. There has to be something that gives the officer reasonable suspicion to detain Mr. Velazquez. That's where we start. What was the reasonable suspicion? Reasonable suspicion of what? The reasonable suspicion, Your Honor, would be two things. When the officer first shows up and says to the group they have to go inside, there's no reasonable suspicion particularized to Mr. Velazquez at that point. It's the group. Right. When Mr. Magana says we'll go inside and Mr. Velazquez, instead of saying anything to indicate compliance or doing anything to indicate compliance, questions the officer. And says what's up? Right. Okay. So that's reasonable suspicion that a crime is afoot? Well, at that point, the officers have given a lawful command to disperse. Mr. Velazquez is not dispersing. The police car was driving away and it came back. At that point, there is at least reasonable suspicion. He's apparently driving away because they thought the people were dispersing. Right. When he says what's up and wants to know what's going on, maybe that proves that he's not dispersing. Right. That's why the officer was going to investigate it. Now he has the right? You're saying the officer at that point with the comment what's up, he now has the authority to lawfully detain Velazquez and to give him commands to do, for example, put his hands behind his head? That's what you're saying? What happens, Your Honor, I am saying that but with this caveat. The way this actually plays out is when Officer Abouhadwan returns, Mr. Velazquez questions him again by repeating what's up. Officer Abouhadwan now notices the bloodshot eyes, he smells the alcohol, and he wants to find out why Mr. Velazquez is not dispersing. He gets out of the car, Officer Abouhadwan, and he attempts to move Mr. Velazquez away from the group so he can talk to him. Officer Abouhadwan tries a twist lock control hold where he grasps a hold of Mr. Velazquez's hand to walk him to another location. That's when Officer Abouhadwan feels Mr. Velazquez pull away from him. But isn't all this evidence disputed? I mean, my problem with the JMOL, judgment as a matter of law, the facts have to be undisputed. And this was all disputed. I mean, there was evidence that none of this was even in the police report, it was prepared by the officer, that there was contradictory evidence about what was said, who did what when. I mean, you're telling us your version of events, but the record has another contrary set of events. And it seems to me it's something that should have gone to the jury to decide, not for the judge to just take it away from the jury. Well, the jury did get to decide the excessive force, Your Honor. Right, but this false arrest was a separate claim. No, I understand. And the trial court determined after hearing all of the evidence. He's making findings of facts, his own findings of facts. He drew inferences in favor of the city, didn't he? I don't believe so. Well, what about this notion that it's not evidence of what was said, that everybody around there didn't hear it? Did you? Is that making a finding that it wasn't said? No. I mean, a juror could say to himself, well, even though they didn't hear it, it could have been said. But can the judge say that?  The way that I read the transcript, and I was there, but the way I read the transcript was if somebody's asked a question, did Officer Abu-Hadwan say this, and the witness says no, that's evidence that it wasn't said. Judge Reel obviously believed that if the answer that came out was I didn't hear it, that is not evidence that it wasn't said. It's evidence that that witness didn't hear it. If we disagree with that, then there was, i.e., if we believe that if somebody who was close enough to hear it didn't hear it, that that is at least evidence that it wasn't said, from which the jury could draw evidence that it wasn't said, then he is making findings and we need to reverse the JMOL. Let's assume that that's what we, we just don't agree with you or Judge Reel on that, and we reverse on that. Isn't the fact that that question of the lawfulness of the arrest did not go to the jury, doesn't that infect the jury's verdict on the excessive force claim? Because doesn't the analysis of excessive force have to begin with the question of whether there was a lawful basis to detain and to investigate and arrest Velazquez? If the answer is yes, there was a lawful basis, then force that is necessary to effect compliance would be appropriate. But if there is not a lawful basis, then the first time the officer touches Velazquez is not a lawful touching. That's an assault, right? So aren't they very different? Isn't it a very different decision tree that the jury would be engaging in, depending on whether the arrest was lawful or not lawful or the detention was lawful or not lawful? If the jury had been told that the reason they were not deciding a false arrest claim on the verdict form is because the court has determined as a matter of law that the arrest was lawful. Well, let's assume just for this question that we think the jury should have answered the first question about the arrest. Okay. All right? Then no. They do not automatically flow together because the Ninth Circuit model jury instruction on excessive force lists a series of factors, and it talks about objective reasonableness. And one of them is not whether there was an underlying crime? No. The first factor, Your Honor, is the severity of the crime. Well, but it assumes that there was a crime. It assumes there was a crime, but the jury can also make that determination for themselves. Were they told that? Were they told there was a crime? No. Were they told that they can make the determination whether there was a crime? It's in the jury. It's in the instruction that. What was in the instruction? It was the Ninth Circuit model jury instruction, so that. I haven't looked at it. The instruction doesn't say that it's up to you to determine whether there was a crime or not. It simply lists one of the factors. But if they had had the first part of the case, then it would have been up to them to decide whether there was a crime or not. That's true. Right. And so if they concluded that there wasn't a crime and, therefore, no valid arrest, wouldn't that have some major impact on the excessive force question? I don't know because, again, if the jury decided, for example, that there was not probable cause to arrest for public intoxication. Okay. Right? Let's say they focused on that. And they could still decide that at some point there was reasonable suspicion because that wasn't a separate question for the jury. Okay. But maybe they said they decided that there wasn't reasonable. In order to decide on the original detention issue, they would have to decide whether there was probable cause to arrest him for something. Well, the first question would be. Wait a minute. Just a minute. And as to that, the reasonable suspicion issue comes in because one of the things that there was possibly reasonable cause to arrest him on was resisting arrest, which only is a crime if there was reasonable suspicion of something else. So they would have to get to the reasonable suspicion question. The jury could find reasonable suspicion to detain to investigate public intoxication, but they could find there was not probable cause to arrest for public intoxication as there was. But they could also find that there was not probable reasonable detention to investigate for anything, which is why there was no crime at all. And if they found that, wouldn't that influence the excessive force question? But there was nothing preventing them from making that finding. That's what I'm trying to find out. Were they asked to make that finding? They were not asked. With regard to the excessive force, were they told they could make the finding? They weren't. They thought it was a relevant question? They weren't told they could and they weren't told they couldn't. They were given a series of factors to determine, and one of the factors was the severity of the crime at issue. They heard testimony. Were they instructed on which crime and what crime and was there a crime? Ordinarily on when a false arrest claim goes to the jury, there will be a paragraph in the jury instruction that says under State law or under Federal law. There wasn't here. So therefore, it was totally obscured as to what the connection was between the detention and the force. But they weren't prohibited from making that analysis during their assessment on excessive force. Now, I ask a question of plaintiff's counsel about the closing argument. Did you argue the case at trial? I did, Your Honor. All right. The statements that you made in closing argument about a police officer tells you to stop, you stop. A police officer tells you to jump, you say how high. I think that is just a complete misstatement of the law under California law, isn't it? Well, Your Honor, if the officer is giving you a lawful command, and it was obviously our position that Officer Abu Hajj. That's the problem. It has to be a lawful command. And if I was in front of my house, if I was in front of my house at 3.30 in the morning, and there wasn't any noise, but I was just standing in front of my house at 3.00 in the morning, and the police came and said, get in your house. And I said, no, I don't want to go in my house. Could he do all the stuff to me that he did to this guy? Again, Your Honor, it comes back to, and I would like to give you a yes or no answer. I think there is a yes or no answer. Well, if you're with seven to nine. I just gave you a hypothetical. I'm not with seven to nine people. I'm standing there by myself in front of my house at 3.30 in the morning. Under that hypothetical, no. Okay. So, therefore, your statement's untrue. If he says to me, you know, put your hands behind your head or whatever he said to me, I could just say, look, I'm not doing anything, Officer. I'm not doing it. I understand what you're saying, Your Honor. But, again, in the context of the case and in the context of the commands that Officer Abu Hadwan gave, I was not trying to mislead the jury, if that's the implication from the bench. I wrote this down from your closing argument. I think it's almost an exact quote. If a police officer tells you to do something, you do it. If not, he will investigate you. And you went on from that. Now, is that really the law? The law is that if the officer has reasonable grounds to give a command, a lawful command, and you don't comply, he can investigate you. Yeah, I don't think that's what you said in your closing argument. Well, Your Honor, you... And my point is that I think it then left the jury with an impression that we start with a premise that if a police officer tells you to do something, you do it. Then if you don't do it, reasonable force can be utilized to make you do it. And I don't think that is what the law is. The law starts with the question of whether there is grounds for a police officer to give you a command. There's the right to walk away. You've totally eliminated that. Your Honor, again, in the context of this case, the penal code, California penal code, does give somebody the right to use self-defense against an officer who's using excessive force. But when an officer gives a lawful command, you do not have the right to just walk away. The question is whether it's a lawful command or not, obviously. And that's what gets to Judge Berzon's hypothetical. The jury was instructed that the arguments of counsel are not evidence and they are not the law. And as you pointed out during Appellant's brief, there was no objection. There were objections during my closing argument. There was an objection that was overruled. But they did have the right to do it. And the other thing that's important to note, there were two counsel that were representing the plaintiff, Mr. Longo and Mr. Zola. Mr. Zola was the one that was having some challenges with Judge Reel. And Judge Reel was having problems based on Mr. Zola's, I want to call it sort of quirky behavior during the trial. What was that? What was his quirky behavior? Saying thank you? Well. Saying good morning to her? No. It was really weird. He was thanking the judge. He was making comments to the judge that Judge Reel didn't want him to make and had asked him to stop making it and he continued to make it. And Judge Reel even instructed the jury at some point. He said do not take any of the interaction between myself and Mr. Zola as being anything for you to concern yourself with in deliberation. So they certainly. Can I ask one other question on a different subject? Yes, Your Honor. Okay. So on a different subject. The Monell and the exclusion of the evidence with regard to Velasquez's history. I gather that there was history that he had something like, I don't know, 20 or 30 internal investigations about use of force? No. There were prior, there were use of force reports because if you have a use of force such as a baton use, that's a reportable use of force. That's not a complaint. Right. Okay. Then you have separate internal affairs complaints. Okay. There were a dozen or so uses of force involving a baton. I don't recall how many internal affairs things there were. But we had made a motion in Lemonet which the Court granted to exclude that. Well, that's what I'm asking you. I mean, in terms of the Monell claim, I mean, there's well-raised opinion that suggests that that should come in on a Monell claim. Well. With appropriate limiting instructions. Or you could do it and separate the trial and do it in pieces. Right. And the trial wasn't bifurcated, but there was also no testimony from the plaintiff that could establish how the jury should put all those complaints in context, because just. Well, it was excluded. No, but what I'm saying is if you have, let's say you have a witness, for example, who testifies that based on X number of complaints, there appears to be deliberate indifference on the part of the police department, because that's the standard under Monell. Right. And you cannot have a Monell finding under respondeat superior. There has to be an individual finding. So the plaintiff produced no evidence whatsoever, no witnesses who could, even if that evidence had come in, even if the evidence of Officer Abu Hadwan's previous uses of force had come in, there was no. I'm missing how they were supposed to produce any witnesses when they weren't allowed to put on the evidence. There was a. There would be someone they could call to lay the foundation. If they had been allowed to put in the records. Well, they didn't designate any experts. And that would have taken. Maybe someone from the police department or internal affairs. I mean, it doesn't have to be an expert. Well, the way that they proffered it was simply to show that Officer Abu Hadwan had a pattern. He knows that the city had a pattern or policy of tolerating this kind of conduct by its police officers, including this particular police officer himself. Right. But that was never, they never made any effort throughout discovery and throughout presentation of the witness list or experts to establish that for Manel. They were, I think what happened was they wanted to get it in at trial and hope that the jury would conclude that because the officer had used batons in the past and maybe someone had complained about it, that he must have done it in this, unlawfully and unreasonably in this case. There was no effort made to tie it to Manel. I don't think there was any portion of their argument where they said it goes to Manel. They simply wanted to get it in. I was just looking a few minutes ago at their opposition to your motion in Lumine to exclude it. And they do tie it to Manel in that. I'm talking about during the trial, Your Honor. Well, but it was excluded. So why would it come up during the trial? Well, I understand, Your Honor. I mean, I think that the judge's decision as to whether or not to allow that evidence in the way it was presented certainly would not be plain error or erroneous on the part of Judge Reel. Why is it plain error? I'm not following that. They objected at the motion in Lumine stage. The evidence excluded. Did they not preserve it at trial? Did they not attempt to do it? No, it was attempted to be preserved, Your Honor. I misspoke. Again, I had not focused my opposition on the Manel issue as to whether or not the Manel should come in. I believe the focus was the testimony at trial itself where they attempted to elicit testimony that had been excluded by the motion in Lumine. So I'm not as prepared to address that with the Court now since I haven't reviewed the motion in Lumine in the opposition to the motion in Lumine or the Court's findings, and I apologize for that. Okay. All right. Thank you, counsel. You're well over your time. I think you had a couple minutes left. Thank you, Your Honors. Just briefly, there was a basis for finding that the rejection of the false arrest infected the excessive force. I'm referring to the fourth day, page 72 and 73 of the transcript. First of all, the Court said generally it's unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest. So it presupposes the very claim occurs only when there is a lawful arrest. And then the Court explained the factors to consider, which, again, I would submit definitely did not give the jury an option to find that because the initial – there was no initial basis for any lawful arrest and everything that followed was unreasonable. The Court instructed in determining whether the officer used excessive force, consider, one, the severity of the crime or other circumstances to which the officer was responding, three, whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight, not giving the opportunity to say there was no lawful arrest at all, and six, the availability of alternative methods to take the plaintiff into custody or to subdue the plaintiff. Again, all this presupposes that that is just a question of the degree of force, but that the officer's right to use some force was absolutely taken for granted. So I would – So was the jury told at the outset that there was a false arrest claim in the case? I believe that was one of the initial, yeah, I believe, the opening. They didn't get it at the end. I mean, whatever they were told, they knew it wasn't there anymore. They could put two and two together, I suppose. I mean, again, it's very difficult to determine what exactly the insurer was thinking, but there's certainly enough to suggest that once that was not there, the very way the Court communicated was there was a lawful arrest. The question is did the officer use too much force in effecting it. And the jury did not have the opportunity to conclude that there was no basis for arrest and, therefore, any type of force was unreasonable. Did you ask in your briefing – I don't recall this or anywhere else – that if we are inclined to reverse this case, that we assign it to a different district court judge? I know that that's uncommon. In the Crutchman case, it refused to do that. I would suggest that, especially given the nature of the particular interactions between the Court and counsel, that would be advisable in this case. I know it's an unusual remedy, but given the frequent interactions, that would probably be the best way to maintain the prospect of a fair trial. All right. Thank you. If the Court has no further questions. Thank you, Your Honor. Thank you, counsel. The last quest versus Long Beach will be submitted.
judges: Smith, Wardlaw, Berzon